DA 13-0318

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 310

IN THE MATTER OF:

A.R.B.,

     A Youth in Need of Care.

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Butte/Silver Bow, Cause No. DN 12-15-BN
Honorable Brad Newman, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

     Kathryn McEnery; Attorney at Law; Kalispell, Montana

     For Appellee:

     Timothy C. Fox, Montana Attorney General; Micheal S. Wellenstein,
Assistant Attorney General; Helena, Montana

     Eileen Joyce, Silver Bow County Attorney; Butte, Montana

          Submitted on Briefs:  September 26, 2013
          Decided:   October 22, 2013

Filed:

                    _____
                             Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1      The biological mother of A.R.B. appeals the order of the Montana Second Judicial District Court, Silver Bow County, terminating her parental rights.

¶2      We address the following issues on appeal:

¶3      *1. Whether the District Court erred by not staying proceedings on the ground that Montana no longer held exclusive and continuing jurisdiction over the child custody determination under § 40-7-202, MCA.*

¶4      *2. Whether the District Court erred by not staying proceedings on the ground that Montana was an inconvenient forum under § 40-7-108, MCA.*

¶5      We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶6      M.B. (Mother) gave birth to A.R.B. in June 2012, at St. James Hospital in Butte, Montana. During and after the birth, the hospital staff noticed Mother exhibiting numerous erratic behaviors. Mother would become paranoid and unaware of her surroundings, she swatted the nurses and threatened to spit on them, and she attempted to jump off the bed to get to A.R.B. as the nurses were cleaning up A.R.B. The hospital contacted the Montana Department of Public Health and Human Services (Department) concerned about Mother's apparent mental health issues and inability to care for the child.

¶7      The Utah Department of Family Services (Utah DFS) also contacted the Department. Utah DFS previously had removed Mother's other child from her care due to neglect. Mother's parental rights to the other child were terminated by a Utah court in

2

December 2011. Utah DFS expressed concerned that Mother was coming to Butte to have her baby in order to avoid that agency's jurisdiction.

¶8 The Department sent Child Protection Specialist Arletha Swan to the hospital to interview Mother. Swan assessed her as distracted and unable to focus. Mother refused to give any information regarding herself or her history. The Department removed A.R.B. from Mother at the hospital.

¶9 The Department filed a Petition for emergency protective services, adjudication as youth in need of care, and temporary legal custody of A.R.B. on June 21, 2012, supported by an affidavit from Swan detailing the behaviors Mother exhibited and Swan's assessment of her. The District Court granted temporary emergency protective services and scheduled a show cause hearing on the Department's petition for temporary legal custody for July 11, 2012. Mother failed to appear for the show cause hearing but was represented by counsel. After listening to Swan's testimony, the District Court adjudicated A.R.B. a youth in need of care and granted the Department temporary legal custody of A.R.B.

¶10 The Department placed A.R.B. in a temporary foster home in Butte for approximately three months. In September 2012, pursuant to the Interstate Compact on the Placement of Children (ICPC), the Department placed A.R.B. in foster care with the Utah family who had adopted Mother's other child.

¶11 Following the placement, Mother filed a "Motion to Relinquish Jurisdiction from Montana to Utah." In the brief in support of her motion, she argued that jurisdiction over

A.R.B.'s case was governed by the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) and that once Mother went to Utah and the Department placed A.R.B. with a foster family in Utah, Montana no longer had exclusive, continuing jurisdiction. She alternatively argued that the District Court should decline to exercise jurisdiction because Utah constituted a more convenient forum. The Department opposed the motion and filed a petition for permanent legal custody and the termination of Mother's parental rights on the basis of abandonment, noting that Mother had no contact with the Department since July 2012 and no contact with Utah DFS.

¶12 The District Court conducted a hearing on the motion to relinquish jurisdiction. The Department's lawyer advised the court that Utah DFS contacted him and indicated it would not accept jurisdiction or a transfer of the case. He argued that under Article V of the ICPC, Montana retained jurisdiction over A.R.B. even after placing A.R.B. in a foster care placement in Utah. The District Court issued an order on February 19, 2013, denying Mother's motion to relinquish jurisdiction. The court relied on the fact that no Utah court with competing jurisdiction would assume A.R.B.'s case and recognized the jurisdiction vested in it through the ICPC.

¶13 On March 20, 2013, the District Court conducted a hearing on the Department's petition for permanent legal custody and the termination of Mother's parental rights. Mother was not present for the hearing, and her attorneys stated that they were unable to establish contact with her. Swan testified to Mother's failure to appear at a family group conference to assist in the placement of A.R.B. or to contact the Department regarding

4

the development of a treatment plan. Swan also testified that Mother had not seen A.R.B. since A.R.B.'s birth and that her lack of cooperation prevented any visitation from occurring. Finding that Mother had abandoned A.R.B., the District Court terminated her parental rights and granted the Department permanent custody of A.R.B. with the right to consent to adoption or guardianship.

## STANDARD OF REVIEW

¶14 We review a district court's decision on a motion to decline jurisdiction for an abuse of discretion. *In re Lloyd*, 2011 MT 133, ¶ 17, 361 Mont. 22, 255 P.3d 166. A court abuses its discretion when it acts "arbitrarily, without employment of conscientious judgment or in excess of the bounds of reason, resulting in substantial injustice." *In re K.H.*, 2012 MT 175, ¶ 19, 366 Mont. 18, 285 P.3d 474.

## DISCUSSION

¶15 *1. Whether the District Court erred by not staying proceedings on the ground that Montana no longer held exclusive and continuing jurisdiction over the child custody determination under § 40-7-202, MCA.*

¶16 Mother acknowledged that the District Court had jurisdiction to make an initial custody determination pursuant to § 41-1-103, MCA, because A.R.B. was within the State of Montana and allegedly subject to abuse and neglect in this state. Mother argues, however, that once she left Montana for Utah and the Department placed A.R.B. with a Utah foster family, the District Court was required to relinquish jurisdiction to a Utah court under the "exclusive, continuing jurisdiction" provision in § 40-7-202, MCA.

¶17     Section 40-7-202, MCA, part of the codified UCCJEA, states that when a Montana court has made a child custody determination consistent with §§ 40-7-201 or 40-7-203, that court has exclusive, continuing jurisdiction over the determination until:

> (a)     a court of this state determines that neither the child, the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or
>
> (b)     a court of this state or a court of another state determines that neither the child, a parent, nor any person acting as a parent presently resides in this state.

Mother cites *In re B.P.*, 2008 MT 166, ¶ 19, 343 Mont. 345, 184 P.3d 334, for the proposition that a district court is obliged to apply this statute and relinquish jurisdiction upon a finding under (a) or (b).

¶18     The State argues on behalf of the Department that Montana retained jurisdiction over the case because the Department placed A.R.B. in a Utah foster home under the ICPC. Article V of the ICPC, codified at § 41-4-101, MCA reads:

> The sending agency shall retain jurisdiction over the child sufficient to determine all matters in relation to the custody, supervision, care, treatment, and disposition of the child which it would have had if the child had remained in the sending agency's state until the child is adopted, reaches majority, becomes self-supporting, or is discharged with the concurrence of the appropriate authority in the receiving state. Such jurisdiction shall also include the power to effect or cause the return of the child or the child's transfer to another location and custody pursuant to law.

¶19     The District Court declined to make a determination under (a) or (b) of § 40-7-202, MCA, because there was not a court in Utah to which it could relinquish jurisdiction. The District Court acknowledged that *B.P.* imposed an obligation upon

6

district courts to apply § 40-7-202, MCA, but it distinguished the present case from *B.P.* because, in that case, the father had registered a Montana custody order with California courts and the mother requested that the Montana court relinquish jurisdiction after seeking to pursue an action for visitation in California. Here, there were no ongoing proceedings in a Utah court. In fact, Utah DFS indicated that it would refuse jurisdiction over A.R.B.'s case. We agree with the District Court's conclusion that any obligation to relinquish jurisdiction to another court under the "exclusive, continuing jurisdiction" provision of the UCCJEA requires a pending proceeding in the other state. The Montana court is not obligated to seek out a sister state's court and demand initiation of a proceeding.

¶20 Because the Department acted in accordance with the ICPC, and absent any pending proceeding in Utah, Article V of the ICPC controls. As the District Court pointed out, the plain language of Article V vests the District Court with jurisdiction in this case regardless of the foster placement in Utah. It dictates that Montana retained jurisdiction after the Department placed A.R.B. in Utah in order to adjudicate the pending proceeding. We therefore conclude that the District Court did not abuse its discretion in declining to relinquish jurisdiction in this case.

¶21 *2. Whether the District Court erred by not staying proceedings on the grounds that Montana was an inconvenient forum under § 40-7-108, MCA.*

¶22 Alternatively, Mother argues that the District Court abused its discretion by not staying the proceedings on the basis that Montana was an inconvenient forum. Section 40-7-108, MCA, is a discretionary provision that allows a court to decline jurisdiction

upon motion by a party if it determines that it is an inconvenient forum under the applicable circumstances. The statute directs a court making such a determination to consider "all relevant factors" and lists factors the court may consider. The fact that another proceeding is not pending in another forum is not dispositive under this provision as subsection (3) states that a court that has determined it is an inconvenient forum "shall stay the proceedings upon condition that a child custody proceeding be promptly commenced in another designated state . . . ."

¶23 Mother argues that the relevant factors in this case were that A.R.B. only lived in Montana for a few months before being placed in Utah, that Mother resides in Utah, and that Utah DFS had an interest in A.R.B.'s welfare. Additionally, Mother alleges that the court needed to consider that the court in Utah was familiar with the facts and issues, having previously terminated her parental rights, and that the evidence required for the pending litigation was located in Utah.

¶24 Mother fails to demonstrate that the District Court acted "arbitrarily, without employment of conscientious judgment or in excess of the bounds of reason, resulting in substantial injustice." *K.H.*, ¶ 19. The court pointed out that there were no pending proceedings in a Utah court and that Utah DFS declined to open any investigation regarding A.R.B. We are not persuaded by Mother's argument that a Utah court would be more familiar with the facts and issues involved. The fact that a Utah court previously had terminated her rights to her other child does not automatically demonstrate that a court in that state would be better situated to handle the abandonment at issue in A.R.B.'s

case. The Department presented evidence from witnesses who had observed and assessed Mother's behavior in Montana.

¶25 Although the District Court did not specifically address some of Mother's other reasons articulating why Montana was an inconvenient forum, we conclude that they were immaterial to the District Court's conclusion. The evidence required for the pending litigation was not located in Utah; the Department's case regarding abandonment did not require any evidence from Utah DFS or the Utah foster family. Instead, the evidence necessary for the District Court's determination of abandonment came from the Department, specifically Swan's testimony that Mother had not seen A.R.B. since June 2012 and did not attempt to contact or work with the Department to regain custody of A.R.B. Further, although Mother argues that she would have had difficulty traveling to Montana, she showed no interest or intent to appear and did not attempt to do so remotely through telephone or videoconferencing.

¶26 After viewing the facts in light of the relevant factors under § 40-7-108, MCA, we hold that the District Court was within its discretion to decline Mother's request to declare Montana an inconvenient forum. Its judgment terminating Mother's parental rights to A.R.B. is affirmed.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JIM RICE
/S/ BRIAN MORRIS

9