FILED

April 5 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0524

DA 15-0524

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 81

IN RE THE PARENTING OF:

M.M.K.,

     A Minor Child,

MARGARET AMBROSE,

     Petitioner and Appellant,

  and

BRITNEY NICOLE KERLEE,
n/k/a BRITNEY KUTIL,

     Respondent and Appellee.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDR-2013-374
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

     Barbara E. Bell, Marra, Evenson & Bell, P.C., Great Falls, Montana

     For Appellee:

     Andrew T. Newcomer, Ugrin, Alexander, Zadick & Higgins, P.C.,
Great Falls, Montana

Submitted on Briefs:  March 2, 2016
Decided:  April 5, 2016

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Margaret Ambrose appeals from the District Court's Findings of Fact, Conclusions of Law and Order dated July 23, 2015. We affirm.

¶2 We restate the issue on appeal as follows:

Did the District Court abuse its discretion in concluding that Montana is an inconvenient forum in which to determine whether Ambrose has a parental interest as to M.M.K., pursuant to § 40-7-108, MCA?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3 Britney Kerlee (Kutil) is the mother of M.M.K., who was born in Great Falls, Montana, in April 2011. M.M.K.'s father has not been involved in her life. In June 2012 when M.M.K. was just over a year old, Kutil reached an agreement with Ambrose under which Ambrose would provide temporary care for M.M.K. Kutil knew Ambrose through Ambrose's daughter, but Ambrose is not related to Kutil or to M.M.K. Kutil executed a six-month power of attorney in favor of Ambrose to allow her to care for M.M.K.

¶4 When the power of attorney expired Kutil and Ambrose disagreed as to who should have custody of M.M.K. and Ambrose refused to return the child. The parties disagree about the reasons for this conflict, and whether Ambrose wrongfully retained custody of M.M.K. On June 5, 2013, Kutil recovered physical custody of M.M.K. from Ambrose, with the help of volunteer attorneys, several law enforcement agencies and the Montana Department of Public Health and Human Services, Child Protective Services. Also in June 2013 Kutil, M.M.K., and her husband (they were married in July 2013 and he is not M.M.K.'s father) moved to Oklahoma (1300 miles from Great Falls) where he

2

could find work and where he had family members. Kutil and her husband now have a child together, born in Oklahoma.

¶5    Kutil, M.M.K., Kutil's husband, and their child have lived in Oklahoma continuously since June 2013. Kutil is a stay-at-home mother providing care for the two children. Kutil commenced an action in Oklahoma courts against M.M.K.'s biological father, seeking to establish paternity, child support, and a parenting plan.

¶6    On June 10, 2013, Ambrose commenced the present case in the Montana Eighth Judicial District Court in Cascade County by filing a Petition for Parental Interest Determination pursuant to § 40-4-211(4)(b), MCA. Ambrose filed a concurrent Motion and Brief for Interim Order in which she requested that the District Court grant her interim custody of M.M.K. pending the outcome of the litigation. Kutil responded to the petition requesting that it be denied; that she be awarded costs and attorney fees; and that Ambrose be ordered to pay her travel expenses from Oklahoma for attending any required court proceedings in Montana.

¶7    The District Court referred the case to its Standing Master. In March 2014 the Master held a hearing and found that Ambrose had not established that any emergency situation existed regarding M.M.K. sufficient to justify awarding her interim custody. In July 2014 the Master held another hearing on pending motions, including Kutil's request that the District Court decline to exercise jurisdiction over the case.

¶8    The Master concluded that the District Court had jurisdiction to determine Ambrose's parental interest petition because M.M.K. lived in Montana at the time it was filed, and had lived in Montana for two years before that. The Master determined that the

dispute should be determined in "stages," the first being whether Ambrose was entitled to a parental interest as to M.M.K. Kutil filed objections to the Master's decision and the District Court conducted a hearing in July 2015. The District Court adopted the Master's findings of fact, except for correcting one date, but reversed a number of the Master's conclusions of law. The District Court reversed the Master's conclusion that the parental interest determination should be made first, in Montana, and determined instead that Montana was an inconvenient forum and should decline to exercise jurisdiction over the matter.

¶9 Ambrose appeals.

## STANDARD OF REVIEW

¶10 A district court may refer a matter to a standing master, who may conduct necessary proceedings, rule upon the admissibility of evidence, receive testimony under oath and issue orders that are subject to review by the district court upon objection of a party. Section 3-5-124, MCA; M. R. Civ. P. 53. Unless the district court orders otherwise, a master must issue findings of fact and conclusions of law upon matters referred by the district court. Section 3-5-126(1), MCA. A party may object to the master's findings and conclusions and the district court, after hearing, may adopt the master's report or may modify or reject them in whole or in part; may receive further evidence; or may recommit to the master with further instructions. Section 3-5-126(2), MCA. A district court may modify the master's findings or conclusions only upon objection by a party. *In re Marriage of McMichael*, 2006 MT 237, ¶ 15, 333 Mont. 517, 143 P.2d 439.

¶11 In non-jury actions the district court must accept the master's findings of fact unless they are clearly erroneous, M. R. Civ. P. 53(e)(2). The district court may conduct plenary review of the master's conclusions of law to determine whether they are correct. *Heavirland v. State*, 2013 MT 313, ¶ 14, 372 Mont. 300, 311 P.3d 813. This Court reviews a district court's action de novo to determine whether it applied the proper standard of review to the master's findings of fact and conclusions of law. *In re the Parenting of G.J.A.,* 2014 MT 215, ¶ 11, 376 Mont. 212, 331 P.3d 835.

¶12 This Court reviews a district court's decision on an issue of inconvenient forum to determine whether the district court abused its discretion. *In re the Marriage of Irwin*, 259 Mont. 176, 179, 855 P.2d 525, 527 (1993); *In re the Paternity and Custody of B.E.S.,* 1998 MT 190, ¶ 13, 290 Mont. 188, 963 P.2d 449.

**DISCUSSION**

¶13 *Did the District Court abuse its discretion in concluding that Montana is an inconvenient forum in which to determine whether Ambrose has a parental interest as to M.M.K. pursuant to § 40-7-108, MCA?*

¶14 Ambrose commenced this proceeding to establish that she has a parental interest as to M.M.K., and that she should be awarded custody. Under Montana law, a district court may award "a parental interest" in a child to a person who is not a natural parent as provided in § 40-4-228, MCA. The person petitioning for the award must show by clear and convincing evidence that the natural parent has "engaged in conduct that is contrary to the child-parent relationship"; that the petitioner has established a child-parent relationship with the child; and that it is in the best interest of the child to continue that relationship. Section 40-4-228(2), MCA. A district court's determination of the best

5

interest of the child is broadly based upon "all relevant parenting factors," guided by the considerations in § 40-4-212, MCA. Neither the Standing Master nor the District Court has determined whether Ambrose qualifies for an award of parental interest.

¶15 The issue is not whether the Montana court has jurisdiction over Ambrose's petition, but whether it should exercise that jurisdiction. Montana courts have jurisdiction to determine parenting issues if this State was the home state of the child at the commencement of the action or had been within six months. Section 40-4-211(1)(a), MCA. A Montana court may also assume jurisdiction over parenting issues when it is in the best interest of the child; when the child, the parents or "one contestant" have significant contacts here; and when there is substantial evidence in this State concerning the child's condition and needs. Section 40-4-211, MCA.

¶16 However, a court that has jurisdiction to make a child custody determination may decline to exercise that jurisdiction if it determines that it is "an inconvenient forum under the circumstances" and the court of another state provides a more appropriate forum. Section 40-7-108, MCA. Whatever right Ambrose may have under § 40-4-211, MCA, is subject to the District Court's determination of inconvenient forum.

¶17 A court considering this issue must consider "all relevant factors," including:

> (a) whether domestic violence has occurred . . . ;
> (b) the length of time that the child has resided outside this state;
> (c) the distance between the court in this state and the court in the state that could assume jurisdiction;
> (d) the relative financial circumstances of the parties;
> (e) any agreement of the parties as to which state should assume jurisdiction;

6

(f) the nature and location of the evidence required to resolve the pending litigation, including the testimony of the child;

(g) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

(h) the familiarity of the court of each state with the facts and issues in the pending litigation.

Section 40-7-108(2), MCA. The purpose of these provisions is to "assure that any litigation involving minor children occurs in the state where the child has the closest connection and where significant evidence concerning the child's care, protection, training, and personal relationships is most readily available." *Marriage of Irwin*, 259 Mont. at 178, 855 P.2d at 526. The District Court determined that Montana was an inconvenient forum to determine Ambrose's petition, and we review that decision to determine whether the District Court abused its discretion. *Marriage of Irwin*, 259 Mont. at 178, 855 P.2d at 527.

¶18 While considering the factors involved in determining the inconvenient forum issue, the District Court concluded that domestic violence was not an issue and that M.M.K. had lived in Oklahoma a "substantial portion of her young life." Therefore, the District Court concluded that evidence of M.M.K.'s life in Oklahoma is the primary evidence concerning what is in her best interest, and is "particularly relevant to the determination of the appropriate parenting plan." These considerations weighed in favor of a determination that Montana is an inconvenient forum.

7

¶19 The District Court determined that the 1300 miles between Oklahoma and Montana along with Ambrose's superior financial position[1] both weighed in favor of determining that Montana is an inconvenient forum. The District Court concluded that since no Montana court had made any substantive findings regarding the parental interest determination or a parenting plan for M.M.K., there was no evidence as to which state's courts could most expeditiously consider the case. The District Court noted that Kutil offered to stipulate to the application of Montana law in the Oklahoma proceedings. The District Court reiterated the amount of time M.M.K. has spent in Oklahoma, her lack of contact with Ambrose or Montana since June 2013, and that the Oklahoma court would have more relevant information about the facts.

¶20 Based upon its analysis of the facts under § 40-7-108, MCA, the District Court concluded that the applicable factors all weighed in favor of a determination that Montana should decline to exercise jurisdiction.

¶21 Ambrose recognizes that Oklahoma and Montana have both enacted the Uniform Child Custody Jurisdiction and Enforcement Act, Title 40, chapter 7, MCA. She contends, however, that the District Court's decision was an abuse of discretion because, she asserts, Oklahoma does not provide a statutory basis for a non-relative to assert a parental interest in a child similar to § 40-4-211(6), MCA. The parties substantially disagree about whether Oklahoma law would allow Ambrose to assert custody or

---

[1] Ambrose is a civilian contractor for the United States Air Force. She refused to provide personal financial information during discovery, but the District Court determined that she was in a "far more secure financial position" than Kutil, who has two small children and qualifies for state medical assistance in Oklahoma.

8

visitation rights as to M.M.K. Ambrose does not cite any Oklahoma law demonstrating that she would not be heard in that case, while Kutil cites several Oklahoma cases that could indicate a right for non-relatives to assert a parental-type interest in a child. We need not determine that choice of law issue because this appeal involves an issue of inconvenient forum.

¶22 Ambrose characterizes Kutil's relocation to Oklahoma as "forum shopping" that is contrary to the purposes of the Uniform Child Custody Jurisdiction and Enforcement Act. We find no basis to support this accusation of forum shopping. Kutil's reasons for moving to Oklahoma are plain in the record, and she has offered, on the record, to stipulate to the application of Montana law in Oklahoma proceedings. Further, these choice of law issues are not before the Court. The issue here is whether the facts demonstrate that Montana is an inconvenient forum for determining what is in the best interest of M.M.K. Holding proceedings in Montana to determine M.M.K.'s future would place a heavy burden of time, expense, travel and dislocation upon Kutil and her family.

## CONCLUSION

¶23 Regardless of whether Ambrose can or cannot assert a parental interest in Oklahoma, the issue here is the best forum for determining the best interest of the child. The District Court carefully considered the recommendations of the Standing Master and the applicable facts and concluded that the best forum to resolve M.M.K.'s future is not in Montana. The District Court properly applied the facts to the law and did not abuse its discretion.

¶24    Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ PATRICIA COTTER
/S/ JAMES JEREMIAH SHEA