FILED

06/02/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0479

DA 25-0479

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 123N

IN RE THE MARRIAGE OF:

CLARK RYAN RAMSEY,

       Petitioner and Appellant,

  and

WHITNEY LYNN SODERHOLM (f/k/a
WHITNEY LYNN HUBER, WHITNEY
LYNN RAMSEY),

       Respondent and Appellee.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DR-20-0160
Honorable Colette B. Davies, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Matthew T. Cochenour, Cochenour Law Office, PLLC, Helena, Montana

      For Appellee:

          Jeff A. Turner, Hendrickson Law Firm. P.C., Billings, Montana

Submitted on Briefs: February 18, 2026
Decided:  June 2, 2026

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion, shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Clark Ryan Ramsey appeals from the June 5, 2025 Order of the Montana Thirteenth Judicial District Court, Yellowstone County, declining to relinquish jurisdiction of a child custody matter to the King William County Juvenile and Domestic Relations Court of Virginia (Virginia JDR Court). We affirm.

¶3 Ramsey and Whitney Lynn Soderholm married in 2008; they moved from Virginia to Montana in April 2019. They have three children. Ramsey petitioned for dissolution in the Thirteenth Judicial District Court, Yellowstone County, on February 12, 2020. At the time the dissolution petition was filed, both parties and their children were living in Montana. After a two-day hearing in July 2020, the District Court ruled that Soderholm and the children could move back to Virginia where most of Soderholm's and Ramsey's relatives reside. After the move, Ramsey maintained contact with the children and exercised parenting time, although both parties routinely obstructed the other's contact with the children.

¶4 The underlying matter primarily centers around Ramsey's and Soderholm's disagreement over child custody arrangements. The District Court held a three-day bench trial at which numerous expert and lay witnesses testified to Ramsey's and Soderholm's

ability to parent and to the well-being of the children. In September 2022, the District Court issued Findings of Fact and Conclusions of Law and entered a Final Parenting Plan and Decree of Dissolution. The Final Parenting Plan granted primary physical custody to Soderholm, who would continue to live in Virginia, and allowed Ramsey to spend time with the children in Virginia each month during the school year and to spend time with the children in either Virginia or Montana during school breaks.

¶5 The Virginia JDR Court registered the Final Parenting Plan in July 2024. In September 2024, Ramsey petitioned the Virginia JDR Court on behalf of the children for an order of protection based on allegations of child abuse. Ramsey alleged Soderholm had engaged in abusive behavior and was using corporal punishment. The Virginia JDR Court issued an order of protection that required Soderholm to refrain from subjecting the children to corporal punishment and required Soderholm to attend parenting classes. The order did not otherwise limit Soderholm's contact with the children or remove the children from her custody. A King William County Circuit Court affirmed the order and extended the order's effectiveness to June 6, 2026. Ramsey also moved the Virginia JDR Court to modify the child custody arrangement.

¶6 On November 25, 2024, Ramsey filed in the District Court a Verified Motion to Surrender Jurisdiction Under the UCCJEA (Motion to Relinquish), requesting the District Court to relinquish jurisdiction of the child custody determination to the Virginia JDR Court. Ramsey contended that the District Court no longer had jurisdiction under § 40-7-202(1)(a), MCA, and that even if the District Court had jurisdiction, it was an inconvenient forum under § 40-7-108, MCA. On December 3, 2024, the Virginia JDR

3

Court issued an order staying proceedings on Ramsey's motion to modify child custody until the District Court resolved Ramsey's Motion to Relinquish.

¶7 The District Court held a hearing on Ramsey's motion on June 3, 2025, and denied the motion on June 5, 2025. The District Court concluded it was unnecessary to employ a jurisdictional analysis under § 40-7-202, MCA, because there was not a pending parenting plan proceeding before the Virginia JDR Court. The District Court concluded in the alternative that it retained jurisdiction under § 40-7-202(1)(b), MCA, because Ramsey resided in Montana and it was not an inconvenient forum under § 40-7-108, MCA.

¶8 "We review a district court's decision on a motion to decline jurisdiction for abuse of discretion." *In re B.P.*, 2008 MT 166, ¶ 11, 343 Mont. 345, 184 P.3d 334 (citation omitted). "An abuse of discretion occurs if a court exercises granted discretion based on a clearly erroneous finding of fact, erroneous conclusion or application of law, or otherwise acts arbitrarily, without employment of conscientious judgment, or in excess of the bounds of reason, resulting in substantial injustice." *In re L.D.C.*, 2022 MT 161, ¶ 11, 409 Mont. 439, 516 P.3d 631 (citations omitted). "A finding of fact is clearly erroneous only if not supported by substantial evidence, the court misapprehended the effect of the evidence, or, based on our review of the record, we are definitely and firmly convinced that the lower court was otherwise mistaken." *In re L.D.C.*, ¶ 11 (citation omitted).

¶9 Ramsey asserts the District Court abused its discretion in multiple respects, including (1) by determining there was no pending proceeding in the Virginia JDR Court that necessitated a jurisdictional analysis, (2) by failing to address whether it had exclusive, continuing jurisdiction under § 40-7-202(1)(a), MCA, and (3) by failing to address all the

factors enumerated in § 40-7-108(2), MCA, when it determined it was not an inconvenient forum.

¶10    The Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) governs this dispute. Montana enacted the UCCJEA[1] to address problems arising from interstate child custody disputes, including "re-litigation, forum shopping, and self-help never ending disputes." *See In re A.H.S.*, 2025 MT 57, ¶ 11, 421 Mont. 196, 571 P.3d 1002 (citation omitted). Section 40-7-202(1), MCA, governs whether a district court retains jurisdiction over a child custody determination. *In re A.V.R.*, 2025 MT 162, ¶ 13, 423 Mont. 174, 573 P.3d 305. A district court has no obligation to relinquish jurisdiction over a child custody determination under § 40-7-202(1), MCA, unless a relevant proceeding exists in another state. *In re A.R.B.*, 2013 MT 310, ¶ 19, 372 Mont. 274, 312 P.3d 425.

¶11    The District Court concluded that employing § 40-7-202(1), MCA, was unnecessary because it "ha[d] not been presented with any evidence that a parenting plan proceeding ha[d] been commenced in any state other than Montana." The District Court concluded the Virginia JDR Court's proceedings that addressed Ramsey's petition for a protective order did not constitute a proceeding that invoked a jurisdictional analysis.

¶12    Ramsey argues the District Court abused its discretion by failing to apply § 40-7-202(1), MCA, because he presented evidence that established a child custody proceeding had commenced in the Virginia JDR Court. Soderholm argues that Ramsey raises this theory for the first time on appeal. Soderholm is incorrect. Ramsey repeatedly

---

[1] Sections 40-7-101 through -317, MCA.

represented to the District Court that a motion to modify child custody was pending before the Virginia JDR Court, including in his Motion to Relinquish and at the June 3, 2025 hearing.

¶13    Ramsey's counsel stated at the June 3, 2025 hearing that he did not know if there was a pending parenting proceeding before the Virginia JDR Court and informed the District Court that he would defer to Ramsey's knowledge.  Ramsey's Motion to Relinquish stated that the Virginia JDR Court had set a hearing on Ramsey's motion to modify child custody.  At the June 3, 2025 hearing, Ramsey also referred the District Court to the Virginia JDR Court's orders that were submitted in support of the Motion to Relinquish, which included the Virginia JDR Court's December 3, 2024 order staying proceedings.  Soderholm questioned Ramsey's credibility, but she never asserted that Ramsey had not moved the Virginia JDR Court to modify child custody.  The Virginia JDR Court's December 3, 2024 order staying proceedings clearly establishes that Ramsey's motion to modify child custody was pending before the Virginia JDR Court and that the Virginia JDR Court would either dismiss the motion or accept jurisdiction depending on the District Court's resolution of Ramsey's Motion to Relinquish.  The District Court clearly erred in finding that an action pertaining to the Final Parenting Plan had not been commenced in the Virginia JDR Court.[2]

¶14    Soderholm asserts in the alternative that the District Court could not have transferred jurisdiction of the child custody determination to the Virginia JDR Court

_____

[2] We do not reach the issue of whether the proceedings on the petition for order of protection constitute a proceeding that would trigger a jurisdictional analysis under § 40-7-202, MCA.

because it is a court of limited jurisdiction under the Code of Virginia. Soderholm relies on § 20-146.27, Va. Code Ann., for this proposition. Section 20-146.27(B), Va. Code Ann., permits "a court of this Commonwealth" to modify a child custody determination of another state pursuant to "Article 2 (§ 20-146.12 et seq.)." The Virginia JDR Court constitutes "a court of this Commonwealth" because it has "exclusive original jurisdiction in custody cases" unless and until a Virginia Circuit Court assumes concurrent jurisdiction either through an appeal from a Virginia JDR Court decision or the direct filing of an appropriate proceeding in the circuit court. *Childress v. Childress*, No. 1374-22-3, 2024 WL 1513425, at \*7 (Va. Ct. App. Apr. 9, 2024) (citing *Peple v. Peple*, 364 S.E.2d 232, 235 (Va. Ct. App. 1988)); § 16.1-241(A), Va. Code Ann. (defining Virginia JDR Court's jurisdiction). Soderholm does not argue that the Virginia JDR Court lacks the authority to modify child custody under Article 2 of the Code of Virginia so we decline to address her argument any further. *Griffith v. Butte Sch. Dist. No. 1*, 2010 MT 246, ¶ 42, 358 Mont. 193, 244 P.3d 321 (citations omitted) ("[i]t is not this Court's job to conduct legal research on [a party's] behalf, to guess as to [a party's] precise position, or to develop legal analysis that may lend support to that position").

¶15 The District Court concluded in the alternative that it would retain jurisdiction over the child custody determination even if there was a pending proceeding in the Virginia JDR Court that warranted a jurisdictional analysis. It implicitly relied on § 40-7-202(1)(b), MCA, to conclude that it retained jurisdiction because Ramsey still resided in Montana. Ramsey asserts that the District Court abused its discretion because it did not address whether § 40-7-202(1)(a), MCA, warranted relinquishing jurisdiction.

7

Section 40-7-202(1), MCA, provides that a Montana court has jurisdiction over a child custody determination until

> (a) a court of this state determines that neither the child, the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

> (b) a court of this state or a court of another state determines that neither the child, a parent, nor any person acting as a parent presently resides in this state.

A Montana court loses jurisdiction over a child custody determination once it determines that either of the events described in subsections (a) or (b) have occurred. *In re B.P.*, ¶ 19. The "significant connection" inquiry under subsection (a) is akin to determining whether a "substantial connection" exists for the purposes of determining initial jurisdiction of a child custody determination under § 40-7-201, MCA. Section 40-7-202, MCA, *Annotations*, Comm'rs Note (2025). Section 40-7-202(1)(b), MCA, divests jurisdiction solely based on the domicile of the relevant parties. *See In re B.P.*, ¶ 19.

¶16 Ramsey may have cited § 40-7-202(1)(a), MCA, as the basis for his Motion to Relinquish, but he failed to substantively address whether subsection (a) required the District Court to relinquish jurisdiction. Ramsey only addressed § 40-7-202(1)(b), MCA, by repeatedly and solely asserting that the District Court must relinquish jurisdiction because Soderholm and the children reside in Virginia rather than Montana. Ramsey never articulated how Soderholm's and the children's domicile in Virginia fractured their "significant connection" with Montana and never addressed whether "substantial evidence" was available in Montana as specified in § 40-7-202(1)(a), MCA. The District

8

Court did not abuse its discretion by addressing the substance of Ramsey's jurisdictional argument by determining it retained jurisdiction under § 40-7-202(1)(b), MCA, based on Ramsey's domicile in Montana. *See* § 1-3-219, MCA ("The law respects form less than substance.").

¶17     A district court that retains jurisdiction under § 40-7-202(1), MCA, may decline to exercise jurisdiction if the court determines that it is an inconvenient forum under § 40-7-108, MCA. Section 40-7-202(2), MCA. The district court "shall consider all relevant factors" when assessing whether it constitutes an inconvenient forum, including:

> (a) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;
> (b) the length of time that the child has resided outside this state;
> (c) the distance between the court in this state and the court in the state that would assume jurisdiction;
> (d) the relative financial circumstances of the parties;
> (e) any agreement of the parties as to which state should assume jurisdiction;
> (f) the nature and location of the evidence required to resolve the pending litigation, including testimony of the child;
> (g) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and
> (h) the familiarity of the court of each state with the facts and issues in the pending litigation.

Section 40-7-108(2), MCA; *Stoneman v. Drollinger*, 2003 MT 25, ¶ 16, 314 Mont. 139, 64 P.3d 997 (stating courts must at a minimum consider the factors enumerated in § 40-7-108(2), MCA). A district court's failure to expressly address all the factors enumerated in § 40-7-108(2), MCA, does not constitute an abuse of discretion if the unconsidered factors were immaterial to the district court's conclusion. *In re A.R.B.*, ¶¶ 24-25.

9

¶18 The District Court determined it was not an inconvenient forum because it could expeditiously resolve the issues of the underlying matter and because of its extensive familiarity with the facts and issues of the case. The District Court acknowledged the Virginia JDR Court's order of protection and instructed the parties to inform it if Soderholm subjects the children to physical harm. The District Court implied that retaining jurisdiction aligned with the purposes of the UCCJEA, including discouraging forum shopping.

¶19 Ramsey argues the District Court abused its discretion because the District Court's findings addressed only two of the factors enumerated in § 40-7-108(2), MCA. Ramsey also asserts that the District Court abused its discretion in weighing the factors because it minimized the Virginia JDR Court's protective order that demonstrated the children had been abused by Soderholm and because it overvalued its familiarity with the case and its ability to expeditiously resolve custody issues. Ramsey supports this argument by analogizing to *Stoneman*. Ramsey's reliance on *Stoneman* is misplaced.

¶20 We concluded in *Stoneman* that the record did not indicate whether the Montana court or Washington court could expeditiously resolve a child custody modification issue. *Stoneman*, ¶ 40. We concluded that the District Court overvalued its familiarity with the case because three different district court judges had presided over the underlying matter and it had been subject to two appeals. *Stoneman*, ¶ 41. The District Court in this case did not overvalue its ability to expeditiously resolve the issues of the underlying matter or overvalue its familiarity with the case. Judge Davies is the only judge who has presided over the dissolution and child custody determination. The record demonstrates that the

District Court can expeditiously address child custody issues because the District Court presided over numerous hearings and a three-day trial pertaining to child custody and issued a Final Parenting Plan based on its extensive findings of fact and conclusions of law. *In re Marriage of Fontenot*, 2010 MT 86, ¶¶ 13-15, 356 Mont. 123, 232 P.3d 358 (Louisiana court could expeditiously resolve case because it held hearings on the merits of custody whereas the Montana court only addressed jurisdictional issues). The limited familiarity of the underlying matter that the Virginia JDR Court has gained through the proceedings on Ramsey's petition for a protective order does not outweigh the District Court's substantial knowledge of the matter.

¶21 We also concluded in *Stoneman* that the District Court abused its discretion in addressing which forum could best protect the party from domestic abuse because the District Court "acknowledged the well-documented history of domestic violence" but "neglected to consider which forum could best protect Drollinger and the children from further abuse." *Stoneman*, ¶¶ 32-34. Neither Ramsey, Soderholm, nor the Virginia JDR Court's protective order proceedings indicate that their children have been subjected to extensive and serious domestic violence like in *Stoneman*, where the record clearly demonstrated that the husband repeatedly and violently abused his wife and endangered their children's lives. *Stoneman*, ¶¶ 27, 32-33 (wife suffered serious injuries and husband's behavior corresponded to homicidal indicators). The Virginia JDR Court's protective order prohibited Soderholm from subjecting their children to corporal punishment, such as "popping" the children on the head, but the protective order did not otherwise limit Soderholm's interactions with or custody of the children. The District Court properly

11

considered the severity of the domestic abuse at issue because it instructed Ramsey to inform the District Court if Soderholm subjected the children to physical violence so it could handle the transgressions accordingly.

¶22 The factors that the District Court did not expressly address in its order were immaterial to its conclusion. Soderholm and the children resided in Virginia virtually from the inception of the underlying matter in February 2020 until the District Court entered a Final Parenting Plan in September 2022. The District Court's successful management of the docket clearly demonstrates it was not an inconvenient forum based on the distance between Montana and Virginia, the location of the children, the location of the witnesses and evidence, and the finances of Ramsey and Soderholm. The District Court properly considered the UCCJEA's purpose of discouraging forum shopping because Ramsey's decision to move the District Court to relinquish jurisdiction at this juncture when the circumstances are virtually identical to those impacting the entry of the Final Parenting Plan raises questions as to his motives. *See In re M.M.K.*, 2016 MT 81, ¶ 22, 383 Mont. 161, 369 P.3d 344 (concluding the record did not indicate the parent forum shopped because she stipulated to applying Montana law and her reasons for moving from Montana were "plain in the record").

¶23 The District Court did not abuse its discretion by determining it was not an inconvenient forum pursuant to § 40-7-108(2), MCA, because the record supports it could

12

expeditiously resolve the issues of the case based on its extensive familiarity with the underlying matter and the factors it did not address were immaterial to its conclusion.[3]

¶24    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.  We affirm the June 5, 2025 order.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ CORY J. SWANSON
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON

---

[3] We do not reach whether it would be appropriate to remand for further findings under § 40-7-108(2), MCA, because we concluded the District Court did not abuse its discretion by determining it was not an inconvenient forum.

13